Suture, J.
Two questions are presented in this case for our consideration.
1. Does the state of facts shown by the correspondence amount to an undertaking, or contract, upon which a right of action in law could arise in favor of the plaintiffs ? and,
2. If so, does the proof show such undertaking or contract to be obligatory upon the defendant ?
Each of these propositions is denied by the defense. And it is evident that they must both be sustained by the plaintiffs in order to entitle them to recover. Eor, if a valid undertaking, sufficient to give a right of action, was made by the cashier, professing to act as the agent of the defendant, and duly authorized, when in fact he had no authority, and his act, as such agent, was not recognized, but repudiated by the bank *167 for whom he assumed to so act, the Bank of Cireleville would not, and the cashier alone would be liable upon such unauthorized undertaking by him so made.
It may, therefore, be well to consider, first in order, the last proposition — does the proof show the undertaking, negotiation or arrangement so made by the cashier of the bank with the plaintiffs, according to its terms, obligatory upon the bank?
It is not denied that the acts of the cashier of the bank in the exercise of all of his powers and the discharge of all of his duties, as cashier, would be obligatory upon the bank, as the acts of an authorized agent; and would require no ratification or assent on the part of the bank to give them validity as against the bank.
The charter of this bank provides that “ it shall be lawful for said bank to loan money, buy, sell and negotiate bills of exchange, checks and promissory notes,” etc. O. L. L., Yol. 32, p. 344. But these acts can only be done on the part of the corporation by its agents. And corporations are subject to the same laws in relation to the acts of their agents, which are applied to individual persons in regard to the acts of their agents.
It is not claimed that the respective duties of the board of directors, president and cashier, in the exercise of the franchises of the bank, are prescribed by the charter. So far, therefore, as the limitation of the appropriate duties of the cashier depend upon his office, we can only have respect to the ordinary and well understood duties of that officer in determining his powers. A cashier is defined to be one who has charge of money, or who superintends the hooks, payments, and receipts of a bank or moneyed institution. His actual powers and duties, like those of all other agents, may be more or less qualified, restricted or enlarged by the corporation, institution or party for whom he acts. But in this case, there being nothing to show any restriction or qualification of his powers in that regard, the duties of the cashier may reasonably be understood to extend to the buying and selling, and negotiating bills of exchange, checks and promissory notes, as well as to that of borrowing money, as the *168 agent of the bank. In the discharge of his duty, he is supposed to be instructed and directed, either generally or specially, by the bank, either through its board of directors or president, as the case may be.
It is not denied that if the cashier had purchased or sold a bill of exchange, the property in the same might, by the ■cashier, have been acquired by or transferred from the bank; but it is said that he had not the power, by virtue of his office and as such agent, to impose any liability upon the bank, further than to transfer title to and from his principal. If this be so, it would follow that in case the cashier could sell a bill of exchange at par by not guarantying it, and for a large premium by doing so, that although he knew the bill to be unquestionably good, it would not only be his duty to indorse the same without recourse, and sell at par, but that if he should guaranty the same and sell at a premium, such guaranty would be void. But this could not be claimed on the part of the principal, even in the absence of authority on the part of the agent, after retaining the proceeds of the sale and-ratifying the act. In the case before us, there is no evidence that the correspondence was not approved and assented to by the bank at the time, or that the transaction on the part of the cashier was, at any time after, repudiated or even disapproved by the bank.
We have no doubt, therefore, that the acts of the cashier in the transaction are to be regarded as they were by the parties at the time, as the acts of the bank by its agent, and as obligatory upon the principal as if done by itself through any other regularly constituted agency.
There remains, then, to be considered the other question — ■ does the agreed statement of facts show an undertaking or contract on the part of the defendant upon which a right of action could arise in favor of the plaintiffs ?
A guaranty, in its strict legal and commercial sense, is said to be “ an undertaking by one person to be answerable for the payment of some debt, or the due performance of some contract or duty by another person, who himself remains liable to pay or perform the same.” . . . “ Originally, *169 the words warranty and guaranty were the same, the letter g, ■of the Norman French, being convertible with the w of the German and English, as in the name William or Guillaume. They are now sometimes used indiscriminately; but in gen eral, warranty is applied to a contract as to the title, quality or quantity of a thing sold; and guaranty is held to be the contract by which one person is bound to another for the fulfillment of a promise or engagement of a third party.” 1 Parsons on Contracts, 493. Each is, alike, an undertaking by one party to another to indemnify or make good the party •assured against some possible default or defect, in the contemplation of the parties. A guaranty is, perhaps, always understood, in its strict legal and commercial sense, as a collateral warranty, and often as a conditional one, against some default or event in future. The term warranty, on the other hand, is generally understood as an absolute undertaking in ..presentí, as well as in futuro, against the defect, or for the quantity or quality contemplated by the parties in the subject matter of the contract. But this contract of warranty, whether qualified and collateral, as applied to the performance of a duty, payment of a debt, or happening of an event, when denominated a guaranty; or unqualified and absolute, ■as in cases of warranty when applied to the quality or title of things, has alike, in either case, all the characteristics of a contract or undertaking. It must be supported by a sufficient consideration; it must appear to be an agreement of the minds of the two contracting parties to the proposition constituting the contract. The same remark is also equally applicable to each — that no particular form of words is required ■■to express the contract. Any form of words expressing an undertaking, upon a consideration, to insure the other party against the nonpayment or delinquency of a third party, may constitute a guaranty. And any affirmation or words, sustained by a consideration, showing an undertaking that the quality or title of the thing sold is such as represented, may •amount to a warranty. The consideration in each case may arise out of the transaction. In the case of a guaranty that -it was operative to cause the negotiation or acceptance of the *170 paper; and in that of a warranty that the affirmation or undertaking was operative in causing the purchase, would in each case he a sufficient consideration.
What, then, is the state of facts before us upon the single point to which these general principles apply ?
On the 11th day of November, 1854, the plaintiffs submitted to the defendant a written proposition to purchase a certain bill of exchange held by the defendant against Buckingham & Co., on Adams & Buckingham, for $5000, paying therefor principal, interest and exchange.
The defendant replies on the 15th of November, that the defendant does not then hold that bill, but returns a proposition to sell to the plaintiffs similar bills drawn by Buckingham & Co., of Toledo, for the same amount, on like terms, due November 24.
On the 21st of November, the plaintiffs accept this proposition of defendant, and forward the money in compliance on their part.
Thus far, it is evident that both the parties regarded the negotiation as being for a “ perfectly good ” bill; and principal, interest and exchange were to be paid as the agreed-price. The defendant barely mentions the names of the parties to the bill, and the plaintiffs accept the proposition upon their own knowledge, without question as to the responsibility of the parties.
But the defendant accepts the plaintiffs compliance with-their proposition, retain the full price paid to them, and on-the 4th of December, by letter acknowledges the receipt of principal, interest and exchange, and attempts a performance-on its part of its own proposition — not by sending the bill which defendant had proposed to sell, and for which defendant had so received the price ; nor by returning the money, or offering to do so, and opening a negotiation for the sale of some other bill. But the defendant sends another bill made by entire strangers to the plaintiffs, indorsed by a stranger, and that “ without recourse,” and impart to it full credit on the part of plaintiffs, by an attendant written assurance or affirmation, that it “ is perfectly safe.” This is the language; *171 of the defendant’s letter containing the bill sent to the plaintiffs, upon the subject: “ The Buckingham bills I proposed to give you are gone, but this bill is perfectly safe.”
And upon receipt of the bill and the assurance of its quality by the defendant, the plaintiffs reply: “ Your favor of the 4th inst., with stated inclosure, is received, and is very satisfactory.” This consummated the contract, as understood by the parties. But how was it consummated ? The defendant proposed to sell the Buckingham bills, and it was those only which the plaintiffs agreed to buy, and for which payment was made by plaintiffs, and received and retained by the defendant. Yery true, says the defendant; but the plaintiffs, by their letter of December 7th, just referred to, express their assent to accept the bill of Jefferson Fulton, instead of the Buckingham bills of like amount. There is nothing in the letter, I think, to authorize such a conclusion. The plaintiffs did not say, and there is nothing to induce the supposition that they would have said, that the bill sent them was of itself a satisfactory equivalent for the one withheld, and for which they had paid. All the circumstances going to show that the plaintiffs were unacquainted with the parties to the bill, it is not to be presumed that the defendant would have sent, or the plaintiffs have accepted the bill in place of the Buckingham bills, without an assurance of its being of the same value. But we are not left to conjecture upon this point. The defendant did not presume to s,end the Fulton bill as a compliance of the contract on its part, without an accompanying written assurance; and the plaintiffs only accepted it with such assurance. “ Yourffavor,” . . (say they,) “with stated inclosure, is received* and is very satisfactory.” What was the stated inclosure? The Fulton bill, by the bank stated or vouched to be “ perfectly safe.” That favor simply credited plaintiffs the full price of the Buckingham bills, told them those bills were gone, and added, “ but this bill is perfectly safe.” And this favor, meaning obviously this explanation, and their assurance of the goodness of the bill, forwarded with the bill, the plaintiffs say “is very satisfactory.”
Here, then, is a positive affirmation on the part of the de *172 fendant, in relation to a bill of exchange offered to the plaintiffs, that it is perfectly safe. On the strength of that representation, defendant asks, and the plaintiffs pay for the bill of $5000, the sum of $5050.
It is admitted that after the exercise of all due diligence on the part of the purchasers, the plaintiffs, the bill has proved to be defective of the quality for which it was sold. It was not such a bill as the defendant assured, or affirmed to the plaintiffs at the time of the sale. Now, if a like representation had been made and acted upon in the sale and purchase of a personal chattel, I apprehend there would be no difficulty in arriving at the conclusion that the representation so made by the vendor was clearly a warranty.
But the distinction already alluded to, between a guaranty and warranty, renders the application of the term guaranty, in its strict legal and commercial sense, perhaps inapplicable to this case. For, although hills of exchange are bought and sold like personal property, and the word warranty might be applied not improperly to the title of the holder, the warranty accompanying their transfer, as to their quality, generally has respect merely to the payment of the debt which the bill or note evidences, and is called a guaranty. These facts, however, are apparent in the case. The defendant offered to sell the bill and at a premium price, under a positive affirmation that it was “perfectly safe; ” and on that representation of its quality, the plaintiffs, in full confidence, having no other means at hand to know, bought the bill, and paid such premium price; and this representation so made and received, has proved untrue. It matters nothing, I apprehend, that the defendant honestly regarded the bill safe. The defendant affirmed it to be so, and it is not admissible.for it to now qualify that undertaking. And although this representation is not in the strict language or form of a guaranty, it is difficult for me to perceive how it does not substantially comprehend at least an assurance of the collectibility of the bill. . The term perfectly safe, when applied to commercial paper, must at least mean that the paper is collectible. Short of this, it can not properly be said to possess the quality of being “ perfectly safe.”
*173 Having respect, therefore, to the substance of the transaction between the parties, and the common and well understood meaning of the language used by the defendant and accepted by the plaintiffs, a majority of the court are clearly of the opinion that the same constituted an undertaking on the part of defendant, upon which a right of action in law has accrued to the plaintiffs.
It is not material whether this undertaking be called a warranty, or whether we term the affirmation of the defendant a representation in the nature of a guaranty; the substance of the transaction is the same.' In either case, it was an undertaking which the defendant had a right to make, and the plaintiffs to accept and rely upon. And we think sound principles of law, as well as good morals, require that the same should be held obligatory between the parties.
Nor can this undertaking be invalidated by the doubts which seem to have been expressed afterward by the plaintiffs, whether the same could be enforced in law.
Judgment must, therefore, be entered for the plaintiffs.
Brinkerhoff, C.J., and Scott, J., concurred.
Peck and Gholson, JJ., dissented.